**GORLICK, KRAVITZ & LISTHAUS, P.C.**
Bruce L. Listhaus, Esq.
17 State Street, 4th Floor
New York, New York 10004
blisthaus@gkllaw.com
Tel. (212) 269-2500
Fax. (212) 269-2540
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

BUFFALO LABORERS WELFARE FUND, BUFFALO : 
LABORERS PENSION FUND, BUFFALO LABORERS : 
TRAINING FUND, BUFFALO LABORERS : 
SUPPLEMENTAL UNEMPLOYMENT BENEFIT FUND, : 
BUFFALO LABORERS SECURITY FUND, and BUFFALO : 
LABORERS ANNUITY FUND, by THOMAS L. PANEK, : 
in his fiduciary capacity as ADMINISTRATOR, and : 
LABORERS' LOCAL 210, LABORERS INTERNATIONAL : 
UNION OF NORTH AMERICA, : 
 : 
                              Plaintiffs,          :          **COMPLAINT**
 : 
          -against-          : 
 : 
SOUTH BUFFALO ELECTRIC, INC., : 
 : 
                              Defendant.          : 
 : 
------------------------------------------------------------------------X

Plaintiffs Buffalo Laborers Welfare Fund, Buffalo Laborers Pension Fund, Buffalo

Laborers Training Fund, Buffalo Laborers Supplemental Unemployment Benefit Fund, Buffalo

Laborers Security Fund, and Buffalo Laborers Annuity Fund ("Funds"), by and with Thomas L.

Panek ("Panek") in his fiduciary capacity as Administrator of the Funds, and Laborers' Local 210,

Laborers International Union of North America ("Union") (collectively, "Plaintiffs"), by and

through their attorneys, Gorlick, Kravitz & Listhaus, P.C., as and for their Complaint, respectfully

allege as follows:

## NATURE OF THE ACTION AND JURISDICTION

1.    This is a civil action brought, *inter alia*, pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), as amended (29 U.S.C. §§ 1132[a][3] and 1145), and Section 301 of the Labor Management Relations Act of 1947 (29 U.S.C. § 185) ("Taft-Hartley Act"), by the Plaintiffs for breach of contract, injunctive relief, and other equitable relief under ERISA.

2.    This Complaint alleges that, by failing, refusing, or neglecting to comply with specific statutory and contractual obligations, South Buffalo Electric, Inc. ("Defendant" or "Buffalo Electric") violated one or more collective bargaining agreements with the Union, the respective trust agreements of the Funds, the Taft-Hartley Act, and ERISA.

3.    Jurisdiction of this Court is invoked under the following statutes:

a.    Sections 502(e)(1) and (f) of ERISA (29 U.S.C. §§ 1132[e][1] and [f]);

b.    Section 301 of the Taft-Hartley Act (29 U.S.C. § 185);

c.    28 U.S.C. § 1331 (federal question);

d.    28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce); and

e.    28 U.S.C. § 1367 (supplemental jurisdiction).

4.    Venue properly lies in this district under section 502(e)(2) of ERISA (29 U.S.C. § 1132[e][2]) and section 301 of the Taft-Hartley Act (29 U.S.C. § 185[c]) because the Funds are administered in the district, the contractual breach took place in the district, and the Defendant resides and/or may be found in the district.  Service of process may be made upon Defendant in this or any other district in which it may be found, pursuant to section 502(e)(2) of ERISA (29

U.S.C. § 1132[e][2]).

## STATEMENT OF FACTS

### The Parties

5.      The Funds are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with sections 302(c)(5) and (c)(6) of the Taft-Hartley Act (29 U.S.C. §§ 186[c][5] and [c][6]).

6.      The Funds are also employee benefit plans within the meaning of sections 3(1), 3(2), 3(3) and 502(d)(1) of ERISA (29 U.S.C. §§ 1002[1], 1002[2], 1002[3], and 1132[d][1]), and multi-employer plans within the meaning of sections 3(37) and 515 of ERISA (29 U.S.C. §§ 1002[37] and 1145).

7.      The Funds are authorized to maintain suits as independent legal entities under section 502(d)(1) of ERISA (29 U.S.C. § 1132[d][1]).

8.      The Funds' purpose is to provide fringe benefits to eligible employees on whose behalf employers contribute to the Funds pursuant to collective bargaining agreements between employers in the construction industry and the Union.

9.      The Funds are third-party beneficiaries to such collective bargaining agreements as collectors and trustees of employer contributions made pursuant to these agreements.

10.     The Funds maintain their offices and are administered at 25 Tyrol Drive, Suite 200, Cheektowaga, New York 14227.

11.     Panek, as Administrator of the Funds, is a fiduciary within the meaning of sections 3(21) and 502 of ERISA (29 U.S.C. §§ 1002[21] and 1132) and brings this action in his fiduciary capacity.

3

12.     The Union is a labor organization within the meaning of section 301 of the Taft-Hartley Act (29 U.S.C. § 185), and it represents employees in an industry affecting commerce as defined by section 501 of the Taft-Hartley Act (29 U.S.C. § 142) and section 3(4) of ERISA (29 U.S.C. § 1002[4]).

13.     Defendant is a for-profit domestic corporation doing business in the State of New York.

14.     Defendant is an employer within the meaning of sections 3(5) and 515 of ERISA (29 U.S.C. §§ 1002[5] and 1145), and is an employer in an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act (29 U.S.C. § 185).

15.     Defendant maintains its principal place of business at 1250 Broadway Street, Buffalo, New York 14212.

## Background

16.     Defendant and the Union entered into a collective bargaining agreement covering the time period April 1, 2008 through March 31, 2013 ("2008-2013 Agreement").  The 2008-2013 Agreement contains an evergreen clause, which provides that the agreement shall remain in effect year-to-year after March 31, 2013 unless either Party provides the other with written notice at least sixty days before the expiration of the agreement.  *See* 2008-2013 Agreement, Article XXVIII. Neither party provided such notice in accordance with the terms of the 2008-2013 Agreement. Accordingly, the 2008-2013 Agreement remained in effect through March 31, 2014.

17.     Defendant and the Union also entered into a collective bargaining agreement covering the time period April 1, 2014 through March 31, 2017 ("2014-2017 Agreement") (together, the 2008-2013 Agreement and the 2014-2017 Agreement are referred to in this

4

Complaint as the "Agreements"). The 2014-2017 Agreement remains in full force and effect.

18.     The Agreements require that Defendant make fringe benefit contributions to the Funds at rates set by the Agreements based on the number of hours worked by Defendant's employees within the jurisdiction of the Union. *See* 2014-2017 Agreement, Article XVI, §§1-5, 8 and Article XXII, §§ 2(c) & 3(c); 2008-2013 Agreement, Article XVI, §§ 1-3, 5, 7 and Article XXIII, §§ 2(c) & 3(c).

19.     The Agreements also require that Defendant contribute to the Laborers Employers Cooperation and Education Trust Fund ("LECET"). *See* 2014-2017 Agreement, Article XVI, § 5 and Article XXII, §§2(c) & 3(c); 2008-2013 Agreement, Article XXIII, §§ 2(c) & 3(c). The Funds act as collectors for LECET contributions.

20.     The Agreements further require that Defendant deduct dues checkoffs and Political Action Committee ("PAC") contributions from the wages paid to employees who perform covered work within the trade and geographic jurisdictions of the Union and authorize such deductions in writing, and remit these deductions to the Union. *See* 2014-2017 Agreement, Article XIX, §§ 1-2, 6 & 8 and Article XXII, §§ 2(d) & 3(d); 2008-2013 Agreement, Article XX, § 1-2, 6 & 8 and Article XXIII, §§ 2(d) & 3(d).

21.     An audit of Defendant's books and records conducted by the Funds' contributions auditor for the time period from January 1, 2012 through December 31, 2015 ("the First Audit") revealed that the Defendant failed to report and make contributions for 2,355 hours of covered work.

22.     Based on the number of hours of unreported work, the First Audit found that the Defendant owed $54,540.31 in fringe benefit contributions, $5,230.19 in dues checkoffs and PAC

contributions, and $235.50 in LECET contributions.

23.     Plaintiffs filed a lawsuit against Defendant in the United States District Court for the Western District of New York to recover the funds found to be owed in the First Audit on April 28, 2016, under case number 16-cv-335 (the "Prior Action").  However, unbeknownst to Plaintiffs, Defendant had filed for protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of New York on April 27, 2016, initiating bankruptcy case number 16-10838.  As a result, Plaintiffs had the Prior Action voluntarily dismissed without prejudice, which was "So Ordered" on June 6, 2016.  The Bankruptcy Court dismissed Defendant's Chapter 11 case in an order dated September 9, 2016.

24.     A supplemental audit (the "Second Audit") of Defendant's books and records conducted by the Funds' contributions auditor for the time period from January 1, 2012 through May 28, 2016 revealed that Defendant failed to report and make contributions for 3,177.5 hours of covered work.

25.     Based on the number of hours of unreported work, the Second Audit found that the Defendant failed to submit payment for $73,992.44 in fringe benefit contributions, $7,003.10 in dues checkoffs and PAC contributions, and $317.75 in LECET contributions.

26.     On or about December 21, 2016, Cold Spring Construction Company, a contractor for whom Defendant performed work, remitted payment to Plaintiffs in the amount of $8,104.49 representing $7,395.74 in fringe benefit contributions, $681.11 in dues checkoffs and PAC contributions, and $27.63 in LECET contributions found due under the Second Audit (the "Cold Spring Payment").

## FIRST CAUSE OF ACTION

6

**(Breach of Contract by Buffalo Electric for**
**Failure to Pay Fringe Benefit Contributions)**

27.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 26 of this Complaint, as if fully set forth herein.

28.     The Second Audit found that, as a result of work performed by Defendant's employees within the jurisdiction of the Agreements, Defendant failed to pay $73,992.44 in fringe benefit contributions to the Funds due under the Agreements for the time period January 1, 2012 through May 28, 2016.

29.     After deducting the Cold Spring Payment, Defendant has failed to pay the $66,596.70 in fringe benefit contributions contractually due to the Funds, although all fringe benefit contributions have been duly demanded, and the Funds have been damaged in the amount of $66,596.70.

30.     Defendant's failure, refusal, or neglect to make the required contributions to the Funds violates the Agreements, with respect to which the Funds are third-party beneficiaries.

31.     Accordingly, Defendant is liable to the Funds for delinquent fringe benefit contributions in the amount of $66,596.70 for the audited time period January 1, 2012 through May 28, 2016, plus interest at the rate set by the Agreements from the date payment was due until the date the contributions are paid, liquidated damages in an amount equal to the amount of interest owed on the delinquent contributions, and the Funds' reasonable costs and attorneys' fees.

**SECOND CAUSE OF ACTION**
**(Breach of ERISA Obligations by Buffalo Electric**
**for Failure to Pay Fringe Benefit Contributions)**

32.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1

through 31 of this Complaint, as if fully set forth herein.

33.     Section 515 of ERISA (29 U.S.C. § 1145) requires that employers make fringe benefit contributions in accordance with the terms and conditions of collective bargaining agreements.

34.     Defendant failed to make the required fringe benefit contributions as required by the Agreements. Such failure to make payments violates section 515 of ERISA (29 U.S.C. § 1145).

35.     Section 502(g)(2) of ERISA (29 U.S.C. § 1132[g][2]) provides that, upon a finding of an employer violation of section 515 of ERISA (29 U.S.C. § 1145), the Court shall award to a fund the unpaid fringe benefit contributions, plus statutory damages and interest on the unpaid and/or untimely-paid principal, both computed at the rate provided for under the fund's plan or, if none, as set forth in § 6621 of Title 26 of the United States Code (26 U.S.C. § 6621), together with reasonable attorneys' fees and costs and disbursements incurred in the action.

36.     The 2014-2017 Agreement also provides that Defendant is liable for interest on delinquent fringe benefit contributions at the rate of 10% per annum or at the rate prescribed under section 6621 of Title 26 of the United States Code (26 U.S.C. § 6621), whichever is greater, liquidated damages in an amount equal to the amount of interest owed on the delinquent contributions, and reasonable costs and attorneys' fees. The 2014-2017 Agreement provides, in relevant part:

> If the Employer is delinquent in the payment of fringe benefit contributions to the Funds, the Employer shall pay, in addition to the delinquent fringe benefit contributions, interest on the unpaid amounts from the day due until the date of payment at either the rate of 10% per year or the rate prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater. If the Funds bring an action to recover the interest on delinquent fringe benefit

8

> contributions, the Employer is obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action. In the event that formal Proceedings are instituted…to collect delinquent contributions and a Court renders a judgment in favor of the Funds, the Employer shall pay to the Funds…liquidated damages in an amount equal to the interest on the delinquent contributions.

2014-2017 Agreement, Article XVI, § 9(a)-(b).

37.    Similarly, the 2008-2013 Agreement also provides that Defendant is liable for interest on delinquent fringe benefit contributions at the rate prescribed under section 6621 of Title 26 of the United States Code (26 U.S.C. § 6621), liquidated damages in an amount equal to the amount of interest owed on the delinquent contributions, and reasonable costs and attorneys' fees. The 2008-2013 Agreement provides, in relevant part:

> If the Employer is delinquent in the payment of fringe benefit contributions to the Funds, the Employer shall pay, in addition to the delinquent fringe benefit contributions, interest on the unpaid amounts from the day due until the date of payment at the rate prescribed under Section 6621 of Title 26 of the United States Code. If the Funds bring an action to recover the interest on delinquent fringe benefit contributions, the Employer is obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action. In the event that formal Proceedings are instituted…to collect delinquent contributions [and a] Court renders a judgment in favor of the Funds, the Employer shall pay to the Funds… interest on the delinquent contributions as and for liquidated damages.

2008-2013 Agreement, Article XVI, § 8(a)-(b).

38.    Accordingly, Defendant is liable to the Funds for payment of any and all required monetary contributions due to the Funds, plus additional amounts as statutory damages, interest on unpaid and/or untimely-paid principal, and reasonable attorneys' fees, costs, and disbursements incurred in this action, pursuant to section 502 of ERISA (29 U.S.C. § 1132).

### THIRD CAUSE OF ACTION

9

**(Breach of Contract by Buffalo Electric for
Failure to Remit Dues Checkoffs and PAC Contributions)**

39.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 38, as if fully set forth herein.

40.    The Second Audit found that, as a result of work performed by Defendant's employees within the jurisdiction of the Agreements, Defendant failed to deduct and/or remit $7,003.10 in dues checkoffs and PAC contributions due under the Agreements for the time period January 1, 2012 through May 28, 2016.

41.    After deducting the Cold Spring Payment, Defendant has failed to remit $6,321.99 in dues checkoffs and PAC contributions owed under the Agreements, although all dues checkoffs and PAC contributions have been duly demanded, and the Union has been damaged in the amount of $6,321.99.

42.    Defendant's failure, refusal, or neglect to deduct and/or remit the dues checkoffs and PAC contributions violates the Agreements.

43.    Accordingly, Defendant is liable to the Union for unremitted dues checkoffs and PAC contributions in the amount of $6,321.99 for the audited time period January 1, 2012 through May 28, 2016, plus interest at the New York State statutory rate of nine percent (9%) per year pursuant to section 5004 of the Civil Practice Law and Rules ("C.P.L.R.") from the date remittance was due until the date the dues checkoffs and PAC contributions are remitted.

**FOURTH CAUSE OF ACTION**
**(Breach of Contract by Buffalo Electric
for Failure to Pay LECET Contributions)**

44.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1

10

through 43 of this Complaint, as if fully set forth herein.

45.     The Second Audit found that, as a result of work performed by Defendant's employees within the jurisdiction of the Agreements, Defendant failed to make $317.75 in LECET contributions due under the Agreements for the time period January 1, 2012 through May 28, 2016.

46.     After deducting the Cold Spring Payment, Defendant has failed to remit the $290.12 in LECET contributions contractually due to the Funds, although all LECET contributions have been duly demanded, and the Plaintiffs have been damaged in the amount of $290.12.

47.     Defendant's failure, refusal, or neglect to make the required contributions to the Funds violates the Agreements, with respect to which the Funds are third-party beneficiaries.

48.     Accordingly, Defendant is liable for unremitted LECET contributions in the amount of $290.12 for the audited time period January 1, 2012 through June 30, 2015, plus interest at the New York State statutory rate of nine percent (9%) per year pursuant to section 5004 of the C.P.L.R. from the date payment was due until the date the contributions are paid.

## FIFTH CAUSE OF ACTION
### (Claim for Court Costs and Attorneys' fees)

49.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 48 of this Complaint, as if fully set forth herein.

50.     The Agreements require that Defendant pay the reasonable costs and attorneys' fees incurred in bringing this action if Defendant is found to be delinquent in the payment of fringe benefit contributions to the Funds.  The Agreements provide that, in the event formal proceedings are instituted before a Court of competent jurisdiction to collect delinquent contributions and a Court renders judgment in favor of the Funds, the Employer shall pay the Funds' reasonable

attorneys' fees and costs of the action. *See* 2014-2017 Agreement, Article XVI, § 9(b); 2008-2013 Agreement, Article XVI, § 8(b).

51.     Section 502(g) of ERISA also provides for the recovery of attorneys' fees in actions seeking the recovery of delinquent fringe benefit contributions. *See* 29 U.S.C. § 1132[g].

52.     The Agreements also require that Defendant pay the reasonable costs and attorneys' fees incurred in bringing any action against Defendant to recover the interest on the delinquent fringe benefit contributions due and owing to the Funds. *See* 2014-2017 Agreement, Article XVI, § 9(a); 2008-2013 Agreement, Article XVI, § 8(a).

53.     The Funds have brought this action to recover, among other things, $66,596.70 in delinquent fringe benefit contributions, plus interest from the date payment was due until the date the contributions are paid.

54.     Accordingly, Defendant is liable to the Funds as and for the reasonable costs and attorneys' fees incurred in bringing this action.

## SIXTH CAUSE OF ACTION
### (Claim for Audit Costs)

55.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 54 of this Complaint, as if fully set forth herein.

56.     Pursuant to the Agreements, Defendant is obligated to pay the costs of an audit of its books and records where a delinquency is found to exceed either 10% of the prior year's contribution or $2,000, whichever is greater. *See* 2014-2017 Agreement, Article XVI, § 12(a); 2008-2013 Agreement, Article XVI, § 10(a).

57.     Pursuant to the Second Audit, Defendant is delinquent in the payment of fringe

benefit contributions to the Funds in the amount of $66,596.70 for the period, after deducting the Cold Spring Payment

58.     Defendant is, therefore, liable to the Funds for the cost of the audit of Defendant's book and records for the time period January 1, 2012 through May 28, 2016, as set forth in the Agreements.

**SEVENTH CAUSE OF ACTION**
**(Breach of Contract by Buffalo Electric for**
**Failure to Post and Maintain a Bond)**

59.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 58 of this Complaint, as if fully set forth herein.

60.     Pursuant to the terms and conditions of the 2014-2017 Agreement, Defendant is required to post and maintain a bond of at least $50,000, guaranteeing payment of all fringe benefit and LECET contributions to the Funds and remittance of all dues checkoffs and PAC contributions to the Union that become due and owing. *See* 2014-2017 Agreement, Article XVI, section 10(a).

61.     Additionally, under Article XVI, section 10(b) of the 2014-2017 Agreement provides that if an audit

> reveals a deficiency in the payment of fringe benefit contributions
> or a failure to deduct or remit dues checkoffs, the Union or Funds in
> their sole and absolute discretion may require that the Employer post
> and maintain a bond in the amount of twice the audited deficiencies
> within thirty (30) days of receiving notice of such demand from the
> Union or the Funds.

2014-2017 Agreement, Article XVI, section 10(b).

62.     On December 6, 2016, the Funds mailed notice to South Buffalo of their demand, in light of the deficiencies revealed by the Second Audit, that Defendant post a bond in an amount

13

of twice the audited deficiencies within thirty (30) days (the "Bond Requirement"). As the deficiency was reduced by the Cold Spring Payment, the Bond Requirement now totals $146,347.60. To the extent that Defendant fails to post such a bond in the amount of $146,347.60, Defendant will be in violation of Article XVI, section 10(b) of the 2014-2017 Agreement.

63.    Upon information and belief, Defendant has not posted the Bond as required by sections 10(a) and 10(b) of Article XVI of the 2014-2017 Agreement.

64.    The failure, refusal, or neglect of Defendant to post and maintain the required bond is a violation of the 2014-2017 Agreement, with respect to which the Funds are third-party beneficiaries.

## EIGHTH CAUSE OF ACTION
### (Claim for Injunctive Relief Against Buffalo Electric)

65.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 64 of this Complaint, as if fully set forth herein.

66.    Pursuant to the 2014-2017 Agreement, Defendant is required to (i) timely make fringe benefit and LECET contributions to the Funds, (ii) remit to the Union the dues checkoffs and PAC contributions deducted from the wages paid employees who authorize said deductions in writing, (iii) post and maintain a bond of at least $50,000 to guarantee payment of the required contributions to the Funds and remittance of deductions to the Union, and (iv) post and maintain a bond of at least $146,347.60, to guarantee payment of the required contributions to the Funds and remittance of deductions to the Union.

67.    For the audited time period January 1, 2012 through May 28, 2016, Defendant has failed to timely make fringe benefit and LECET contributions to the Funds, remit to the Union

dues checkoffs and PAC contributions deducted from the wages paid to employees who authorize said deductions in writing, and post and maintain a bond.

68.    Therefore, Defendant is currently in breach of its obligations under the 2014-2017 Agreement.

69.    Defendant's prior conduct demonstrates a significant likelihood that it will continue to breach the terms of the 2014-2017 Agreement.

70.    Plaintiffs have no adequate remedy at law to ensure that Defendant will abide by the terms of the 2014-2017 Agreement.

71.    Plaintiffs will suffer immediate and irreparable injury unless Defendant is enjoined from failing, refusing, or neglecting to (i) make the required fringe benefit and LECET contributions to the Funds, (ii) remit to the Union the dues checkoffs and PAC contributions deducted from the wages paid employees who authorize said deductions in writing, (iii) post and maintain a bond of at least $50,000 to guarantee payment of the required contributions to the Funds and remittance of deductions to the Union, and (iv) post and maintain a bond of at least $146,347.60, to guarantee payment of the required contributions to the Funds and remittance of deductions to the Union.

72.    Accordingly, Plaintiffs ask the Court to issue an injunction permanently enjoining Defendant from failing, refusing, or neglecting to (i) make the required fringe benefit and LECET contributions to the Funds, (ii) remit to the Union the dues checkoffs and PAC Contributions deducted from the wages paid employees who authorize said deductions in writing, and (iii) post and maintain a bond of at least $50,000 to guarantee payment of the required contributions to the Funds and remittance of deductions to the Union, and (iv) post and maintain a bond of at least

$146,347.60, to guarantee payment of the required contributions to the Funds and remittance of deductions to the Union.

### NINTH CAUSE OF ACTION
**(Claim for Injunctive Relief Against Buffalo Electric Pursuant to ERISA)**

73.     The Funds repeat and re-allege each and every allegation contained in paragraphs 1 through 72 of this Complaint, as if fully set forth herein.

74.     Pursuant to ERISA, Defendant is required to timely make fringe benefit contributions to the Funds for as long as Defendant remains obligated to do so under the Agreements.

75.     Upon information and belief, Defendant has failed to timely make all contractually due fringe benefit contributions to the Funds for the audited time period January 1, 2012 through May 28, 2016 and, therefore, is in breach of its statutory obligations under ERISA.

76.     Defendant's prior conduct demonstrates a significant likelihood that it will continue to breach the aforementioned statutory provisions.

77.     The Funds have no adequate remedy at law to ensure that Defendant will continue to adhere to its statutory obligations.

78.     The Funds will suffer immediate and irreparable injury unless Defendant is enjoined from failing, refusing, or neglecting to make the required monetary contributions to the Funds, pursuant to ERISA.

79.     Accordingly, the Funds request this Court issue an injunction permanently enjoining Defendant from violating ERISA by failing, refusing, or neglecting to make the required contributions to the Funds for the term of the Agreements.

## TENTH CAUSE OF ACTION
### (Claim for an Audit of South Buffalo's Books and Records)

80.     The Funds repeat and re-allege each and every allegation contained in paragraphs 1 through 79 of this Complaint, as if fully set forth herein.

81.     The 2014-2017 Agreement provides that "the books and records of the Employer shall be made available at all reasonable times for inspection and audit by the Funds and their designated representatives." 2014-2017 Agreement, Article XVI Section 12(a).

82.     Thus, Pursuant to the 2014-2017 Agreement, Defendant is required to permit and cooperate with an audit of its books and records by the Funds or their designated representatives.

83.     In addition, the 2014-2017 Agreement provides that if

> "the Employer fails to produce the books and records necessary for an audit, the Employer agrees to pay a penalty of up to $400 per day from the date of the failure to produce the books and records to the date the books and records are produced. Nothing herein shall mean that the Funds relinquish their right to commence legal proceedings to compel an examination of the Employer's books and records for audit. In the event the Funds bring an action to obtain an audit of the Employer's books and records, the Employer shall be obligated to pay the reasonable costs and attorneys' fees in bringing said action.

2014-2017 Agreement, Article XVI Section 12(b).

84.     On December 6, 2016, the Funds mailed notice to Defendant of their demand that South Buffalo make its books and records covering May 29, 2016 to date available for examination. To the extent that Defendant fails make its books and records covering May 29, 2016 to date available for examination, Defendant will be in violation of Article XVI, section 12(b) of the 2014-2017 Agreement.

17

85.     Accordingly, the Funds are entitled to an Order directing Defendant to permit and cooperate with the Fund and/or its designated representatives in the conduct of an audit of Alliance's books and records for the period from May 29, 2016 to date, and to pay any sums found due, to pay a penalty of $400 per day that Defendant fails to make its books and records covering May 29, 2016 to date available for examination, and the Funds' reasonable costs and attorneys' fees incurred in bringing this action, in addition to the costs of the audits as provided in the 2014-2017 Agreement Article XVI, Section 12(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant:

(a)     for payment of delinquent fringe benefit contributions in the amount of $66,596.70 for the audited time period January 1, 2012 through May 28, 2016;

(b)     for payment of undeducted and/or unremitted dues checkoffs and PAC contributions in the amount of $6,321.99 for the audited time period January 1, 2012 through May 28, 2016;

(c)     for payment of LECET contributions in the amount of $290.12 for the audited time period January 1, 2012 through May 28, 2016;

(d)     for payment of the cost of the Audits;

(e)     for interest on all delinquent fringe benefit contributions from the time such contributions were due at the rate set by the Agreements;

(f)     for liquidated damages in the amount equal to the interest on the delinquent fringe benefit contributions;

18

(g)     for interest on all unremitted dues checkoffs, PAC contributions, and LECET contributions from the time withheld and/or due at the rate set by section 5004 of the C.P.L.R.;

(h)     for Plaintiffs' reasonable costs and attorneys' fees;

(i)     for an Order requiring Defendant to post a bond in the amount of at least $50,000.00 guaranteeing the payment of the required fringe benefit and LECET contributions to the Funds and remittance of dues checkoffs and PAC contributions to the Union;

(j)     for an Order requiring Defendant to post a bond in the amount of at least $146,347.60 guaranteeing the payment of the required fringe benefit and LECET contributions to the Funds and remittance of dues checkoffs and PAC contributions to the Union;

(k)     for an Order permanently enjoining Defendant from failing, refusing or neglecting to make the required monetary contributions in accordance with ERISA and the Agreements, for so long as Defendant remains obligated to contribute to the Funds; and

(l)     for an Order permanently enjoining Defendant from failing, refusing, or neglecting to deduct and/or remit dues checkoffs and PAC contributions to the Union, for so long as Defendant remains obligated to do so pursuant to the Agreements; and

(m)     for an order requiring Defendant to permit and cooperate with the Fund and/or its designated representatives in the conduct of an audit of Alliance's

19

books and records for the period from May 29, 2016 to date, and to pay any sums found due, to pay a penalty of $400 per day that Defendant fails to make its books and records covering May 29, 2016 to date available for examination; and

(n)     for such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        January 12, 2017

                            GORLICK, KRAVITZ & LISTHAUS, P.C.
                            Attorneys for Plaintiffs

                            By:_____
                            Bruce L. Listhaus
                            17 State Street, 4th Floor
                            New York, New York 10004
                            (212) 269-2500